**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| *MONIEKA WILLIAMS*, | ) |
|     Plaintiff, | ) |
| | ) |
| *v.* | ) |
| | ) |
| *BREIT INVESTMENT CORP.*, | ) |
| *COMENITY CAPITAL BANK,* | ) |
| *JEFFERSON CAPITAL SYSTEMS, L.L.C.,* | ) |
| *MUNICIPAL EMPLOYEES CREDIT UNION OF OKLAHOMA CITY,* | ) |
| *NATIONAL CREDIT ADJUSTERS, L.L.C.,* | ) |
| *OPPORTUNITY FINANCIAL, L.L.C.,* | ) |
| *EQUIFAX INFORMATION SERVICES L.L.C.,* | ) |
| *EXPERIAN INFORMATION SOLUTIONS, INC.,* | ) |
| *and TRANSUNION TELEDATA L.L.C.,* | ) |
|     Defendants. | ) |

## **COMPLAINT**

Plaintiff Ms. Monieka Williams, by her counsel Paúl Camarena, respectfully complains as follows:

### **Introduction.**

1)    The Fair Credit Reporting Act and its progeny provide that, when a consumer disputes information that a furnisher of credit information is reporting to a consumer reporting agency, the furnisher must conduct a reasonable investigation into that information and the consumer reporting agency must conduct a reasonable reinvestigation into that same information.  In the case at bar, Plaintiff Ms. Williams submitted multiple disputes of information reported by Defendant Furnishers Breit Investment Corp., Comenity Capital Bank, Jefferson Capital Systems, LLC, ME Credit Union of Oklahoma City, National Credit Adjusters, LLC, and Opportunity Financial, LLC.  However, the Defendant Furnishers failed to conduct reasonable investigations into their own reported information, and Defendant Consumer Reporting Agencies Equifax, Experian, and TransUnion also failed to conduct reasonable reinvestigations into their

own reported information.

## Constitutional Jurisdictional Standing.

2)      Plaintiff Ms. Williams has standing to prosecute her claims because, *inter alia*, she suffered an injury to her reputation by the Defendants' publishing of inaccurate information about her and because, *inter alia*, she incurred non-legal expenses in addressing the Defendants' illegal conduct.

## Statutory Jurisdiction and Venue.

3)      Pursuant to 28 U.S.C. § 1331, United States district courts have jurisdiction over this action's claims because those claims arise under the laws of the United States.  Pursuant to 28 U.S.C. § 1391(b)(2), the Northern District of Illinois, Eastern Division, is the proper venue because a substantial part of the events or omissions giving rise to this action occurred within the Eastern Division.

## Parties.

4)      Plaintiff Ms. Williams is a natural person and, thus, is a "consumer" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(c).

5)      Defendant Breit Investment Corp. is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ").

6)      Defendant Comenity Capital Bank is a Corporation and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ").

7)      Defendant Jefferson Capital Systems LLC is a Limited Liability Company and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ").

8)      Defendant ME Credit Union of Oklahoma City is a Domestic Credit Union and, thus, is a

"person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ").

9)      Defendant National Credit Adjusters LLC is a Limited Liability Company and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ").

10)     Defendant Opportunity Financial LLC is a Limited Liability Company and, thus, is a "person" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(b) (" 'person' means any … entity ").

11)     Defendant Equifax regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

12)     Defendant Experian regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

13)     Defendant TransUnion regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

## **Factual Allegations.**

### Defendant Furnisher Breit Investment and Defendant Consumer Reporting Agency TransUnion.

14)     Ms. Williams obtained a loan for a few hundred dollars through Logan Loans sometime in 2016.

15)     Although Ms. Williams ceased making her payments to repay the loan in 2016, the loan account balance never increased to more than several hundred dollars.

16)     Later, Logan Loans transferred its interest to Defendant Breit Investment, and Defendant Breit Investment attempted to collect on the loan by reporting Ms. Williams' loan account to Defendant TransUnion.

17)     However, Defendant Breit Investment inaccurately reported to Defendant TransUnion Ms. Williams' loan account date opened as 04/25/2017 and, thus, Defendant Breit Investment inaccurately conveyed that Ms. Williams defaulted more recently than she actually did. *Toliver v. Experian*, 973 F. Supp. 2d 707, 721 (S.D. Tex. 2013) ("Although [the consumer]'s Experian credit reports d[id] identify the original creditor, [ ] a reasonable creditor might nonetheless conclude that the debt, though once owned by another, was opened and defaulted on" the reported "Date opened" and not several years earlier.); *Bibbs v. Trans Union*, 43 F.4th 331, 342 - 343 (3d Cir. 2022) ("to determine whether [a Defendant] is in violation of § 1681e(b), [courts] apply the reasonable reader standard" and "the reasonable reader standard runs the gamut to include sophisticated entities like banks and less sophisticated individuals such as local landlords").

18)     Defendant Breit Investment also inaccurately reported to Defendant TransUnion that Ms. Williams' loan account balance was a couple of thousand dollars and, thus, Defendant Breit Investment inaccurately conveyed that Ms. Williams caused a greater loss than she actually did.

19)     Ms. Williams submitted multiple disputes of Defendant Breit Investment's reporting to Defendant TransUnion and, in Ms. Williams' dispute, she specifically explained that:

- Breit Investment's "reported date opened is wrong because the actual date that the account was opened with the original creditor was earlier" and
- Breit Investment's "reported high balance and balance are wrong because that high balance and balance are less."

20)     Upon information and belief, Defendant TransUnion forwarded Ms. Williams' multiple disputes to Defendant Breit Investment, and Defendant Breit Investment received Ms. Williams'

multiple disputes.

21)    However, Defendant Breit Investment failed to conduct reasonable investigations into its own reported information and continues to report that inaccurate information.

22)    Defendant TransUnion also failed to conduct reasonable reinvestigations into its own reported information about the account reported by Defendant Breit Investment, and Defendant TransUnion continues to report that inaccurate information.

23)    Additionally, Defendant Breit Investment and Defendant TransUnion also failed to report that their reporting is being disputed by Ms. Williams and, thus, in Ms. Williams' dispute, she also specifically protested that Breit Investment is not reporting that its reporting is being disputed.

24)    Nevertheless, Defendant Breit Investment continues to fail to comply with its statutory obligations by continuing to fail to report that its reported information about Ms. Williams is disputed by her.

25)    Defendant Breit Investment's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008). "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio*, 889 F.3d 337, 349 (7th Cir. 2018).

26)    Moreover, Defendant TransUnion further continued to fail to comply with its statutory obligations by continuing to fail to report that Defendant Breit Investment's reported information

about Ms. Williams is disputed by her. *See Wheeler v. TransUnion and TransUnion*, 17 cv 3328 (Dist.Ariz. May 30, 2018) ("[T]he statutory scheme expressly contemplates that consumer disputes can be handled directly with a CRA. See 15 U.S.C. § 1681i. Accordingly, [the consumer] sufficiently alleges that TransUnion performed an unreasonable reinvestigation" when the consumer notified TransUnion that he was not disputing a debt, the furnisher did not respond, and TransUnion failed to change the dispute status.).

   Defendant Furnisher Comenity Capital and Defendant Consumer Reporting Agency Equifax.

27)    Almost a decade ago, Ms. Williams incurred two separate debts with Defendant Comenity Capital.

28)    Although Ms. Williams initially made timely payments to repay her 2 debt accounts to Defendant Comenity Capital; by 2018, she began to struggle to repay those debts, her payments became delinquent, and she never cured that delinquency.

29)    However, Defendant Comenity Capital inaccurately reported to Defendant Equifax that Ms. Williams first became delinquent in 2019 and, thus, Defendant Comenity Capital inaccurately conveyed that Ms. Williams' delinquency was more recent than it actually was.

30)    Ms. Williams submitted multiple disputes of Defendant Comenity Capital's reporting to Defendant Equifax and, in Ms. Williams' dispute, she specifically explained that Comenity Capital's reported dates of first delinquency are wrong because those dates were actually earlier.

31)    Upon information and belief, Defendant Equifax forwarded Ms. Williams' multiple disputes to Defendant Comenity Capital, and Defendant Comenity Capital received Ms. Williams' multiple disputes.

32)    However, Defendant Comenity Capital failed to conduct reasonable investigations into its own reported information and continues to report that inaccurate information.

33)     Defendant Equifax also failed to conduct reasonable reinvestigations into its own reported information about the accounts reported by Defendant Comenity Capital, and Defendant Equifax continues to report that inaccurate information.

34)      Additionally, Defendant Comenity Capital and Defendant Equifax also failed to report that their reporting is being disputed by Ms. Williams and, thus, in Ms. Williams' dispute, she also specifically protested that Comenity Capital is not reporting that its reporting is being disputed.

35)     Nevertheless, Defendant Comenity Capital continues to fail to comply with its statutory obligations by continuing to fail to report that its reported information about Ms. Williams is disputed by her.

36)     Defendant Comenity Capital's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008). "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio*, 889 F.3d 337, 349 (7th Cir. 2018).

37)     Moreover, Defendant Equifax further continued to fail to comply with its statutory obligations by continuing to fail to report that Defendant Comenity Capital's reported information about Ms. Williams is disputed by her. *See Wheeler v. Equifax and TransUnion*, 17 cv 3328 (Dist.Ariz. May 30, 2018) ("[T]he statutory scheme expressly contemplates that consumer disputes can be handled directly with a CRA. See 15 U.S.C. § 1681i. Accordingly,

[the consumer] sufficiently alleges that TransUnion performed an unreasonable reinvestigation"
when the consumer notified TransUnion that he was not disputing a debt, the furnisher did not
respond, and TransUnion failed to change the dispute status.).

Defendant Furnisher Jefferson Capital and Defendant CRAs Equifax, Experian, and TransUnion.

38)    Several years ago, Ms. Williams' small business received a business loan from WebBank
d/b/a Capital on Tap.  Initially, Ms. Williams' small business made timely payments and reduced
the loan balance but, later, her small business began to struggle and, by early 2021, the small
business had defaulted on the loan.

39)    Later, in June 2022, Ms. Williams' small business' loan was transferred from WebBank to
Defendant Jefferson Capital, and Defendant Jefferson Capital attempted to collect on the loan by
reporting the loan debt on Defendant CRAs Equifax, Experian, and TransUnion's files for Ms.
Williams.

40)    However, Defendant Jefferson Capital failed to report that the loan was issued to Ms.
Williams' business (and not to her).

41)    Defendant Jefferson Capital also inaccurately reported a loan debt account opened date of
June 2022 and, thus, Defendant Jefferson Capital inaccurately conveyed that the loan default
occurred more recently than it actually did.  *Toliver v. Experian*, 973 F. Supp. 2d 707, 721 (S.D.
Tex. 2013) ("Although [the consumer]'s Experian credit reports d[id] identify the original
creditor, [ ] a reasonable creditor might nonetheless conclude that the debt, though once owned
by another, was opened and defaulted on" the reported "Date opened" and not several years
earlier.); *Bibbs v. Trans Union*, 43 F.4th 331, 342 - 343 (3d Cir. 2022) ("to determine whether [a
Defendant] is in violation of § 1681e(b), [courts] apply the reasonable reader standard" and "the
reasonable reader standard runs the gamut to include sophisticated entities like banks and less

sophisticated individuals such as local landlords").

42)    Defendant Jefferson Capital additionally inaccurately reported that the loan original balance was the same as the high balance and the same as the past due balance and, thus, Defendant Jefferson Capital inaccurately conveyed that loan payments were never received.

43)    Ms. Williams submitted multiple disputes of Defendant Jefferson Capital's reporting to the Defendant CRAs and, in Ms. Williams' dispute, she specifically explained that:

- Jefferson Capital's "reported balance is wrong because that balance is a business's [sic] debt;"

- Jefferson Capital's "reported date opened is wrong because [the] actual date [the] account was opened with [the] original creditor was earlier;"

- Jefferson Capital's "reporting of an original balance that is the same as the current balance and the same as the past due amount is wrong because the original balance was actually greater and decreased with payments."

44)    Upon information and belief, the Defendant CRAs forwarded Ms. Williams' multiple disputes to Defendant Jefferson Capital, and Defendant Jefferson Capital received Ms. Williams' multiple disputes.

45)    However, Defendant Jefferson Capital failed to conduct reasonable investigations into its own reported information and continues to report that inaccurate information.

46)    The Defendant CRAs also failed to conduct reasonable reinvestigations into their own reported information about the account reported by Defendant Jefferson Captial, and the Defendant CRAs continue to report that inaccurate information.

Defendant Furnisher ME Credit Union and Defendant CRAs Equifax, Experian, and TransUnion.

47)    Almost a decade ago, Ms. Williams received a loan from Defendant ME Credit Union, and Ms. Williams had her auto secure this loan to Defendant ME Credit Union.

48)    Initially, Ms. Williams made timely payments to repay the loan; but, by 2017, she began

to struggle to repay the loan, her payments became delinquent, and she never cured that delinquency.

49)    Because Ms. Williams' payments were delinquent, Defendant ME Credit Union eventually seized the security, the automobile.

50)    Pursuant to the parties' agreement, Ms. Williams' loan debt balance amount was to be reduced by Defendant ME Credit Union's seized security value.

51)    However, Defendant ME Credit Union inaccurately reported to the Defendant CRAs that Ms. Williams first became delinquent in 2018 and, thus, inaccurately conveyed that Ms. Williams had become delinquent more recently than she actually did.

52)    Defendant ME Credit Union also inaccurately reported to the Defendant CRAs Ms. Williams' loan balance without factoring in Defendant ME Credit Union's seized security value and, thus, Defendant ME Credit Union inaccurately conveyed that Ms. Williams had caused a greater loss than she actually did.

53)    Ms. Williams submitted multiple disputes of Defendant ME Credit Union's reporting to the Defendant CRAs and, in Ms. Williams' dispute, she specifically explained that:

- ME Credit Union's "reported date of first delinquency is wrong because that date was actually earlier" and

- ME Credit Union's "reported balance/amount past due are wrong because [that] balance/amount past due do not account for [the] value of [ME Credit Union's] seized security."

54)    Upon information and belief, the Defendant CRAs forwarded Ms. Williams' multiple disputes to Defendant ME Credit Union, and Defendant ME Credit Union received Ms. Williams' multiple disputes.

55)    However, Defendant ME Credit Union failed to conduct reasonable investigations into its own reported information and continues to report that inaccurate information.

56)     The Defendant CRAs also failed to conduct reasonable reinvestigations into their own reported information about the account reported by Defendant ME Credit Union, and the Defendant CRAs continue to report that inaccurate information.

57)      Additionally, Defendant ME Credit Union and the Defendant CRAs also failed to report that their reporting is being disputed by Ms. Williams and, thus, in Ms. Williams' dispute, she also specifically protested that ME Credit Union is not reporting that its reporting is being disputed.

58)     Nevertheless, Defendant ME Credit Union continues to fail to comply with its statutory obligations by continuing to fail to report that its reported information about Ms. Williams is disputed by her.

59)     Defendant ME Credit Union's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008). "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio*, 889 F.3d 337, 349 (7th Cir. 2018).

60)     Moreover, the Defendant CRAs further continued to fail to comply with their statutory obligations by continuing to fail to report that Defendant ME Credit Union's reported information about Ms. Williams is disputed by her. *See Wheeler v. Equifax and TransUnion*, 17 cv 3328 (Dist.Ariz. May 30, 2018) ("[T]he statutory scheme expressly contemplates that consumer disputes can be handled directly with a CRA.  See 15 U.S.C. § 1681i.  Accordingly,

[the consumer] sufficiently alleges that TransUnion performed an unreasonable reinvestigation"
when the consumer notified TransUnion that he was not disputing a debt, the furnisher did not
respond, and TransUnion failed to change the dispute status.).

Defendant Furnisher National Credit and Defendant CRAs Equifax, Experian, and TransUnion.

61)     Years ago, Ms. Williams obtained a "PayDay" loan from subprime lender "Speedy
Ca$h."  Initially, Ms. Williams made timely payments and reduced the loan balance but, later,
she defaulted on the loan.

62)     Years later, in 2023, Ms. Williams' loan was transferred from Speedy Ca$h to Defendant
National Credit, and Defendant National Credit attempted to collect on the loan by reporting the
loan debt to Defendant CRAs Equifax, Experian, and TransUnion.

63)     However, Defendant National Credit inaccurately reported a loan debt account opened
date of 2023 and, thus, Defendant National Credit inaccurately conveyed that the loan default
occurred more recently than it actually did.  *Toliver v. Experian*, 973 F. Supp. 2d 707, 721 (S.D.
Tex. 2013) ("Although [the consumer]'s Experian credit reports d[id] identify the original
creditor, [ ] a reasonable creditor might nonetheless conclude that the debt, though once owned
by another, was opened and defaulted on" the reported "Date opened" and not several years
earlier.); *Bibbs v. Trans Union*, 43 F.4th 331, 342 - 343 (3d Cir. 2022) ("to determine whether [a
Defendant] is in violation of § 1681e(b), [courts] apply the reasonable reader standard" and "the
reasonable reader standard runs the gamut to include sophisticated entities like banks and less
sophisticated individuals such as local landlords").

64)     Defendant National Credit also inaccurately reported that the loan original balance was
the same as the high balance and the same as the past due balance and, thus, Defendant National
Credit inaccurately conveyed that loan payments were never received.

65)     Ms. Williams submitted multiple disputes of Defendant National Credit's reporting to the the Defendant CRAs and, in Ms. Williams' dispute, she specifically explained that:

- National Credit's "reported date opened is wrong because [the] actual date [the] account was opened with [the] original creditor was earlier" and
- National Credit's "reporting of an original balance that is the same as the current balance and the same as the past due amount is wrong because the original balance was actually greater and decreased with payments."

66)     Upon information and belief, the Defendant CRAs forwarded Ms. Williams' multiple disputes to Defendant National Credit, and Defendant National Credit received Ms. Williams' multiple disputes.

67)     However, Defendant National Credit failed to conduct reasonable investigations into its own reported information and continues to report that inaccurate information.

68)     The Defendant CRAs also failed to conduct reasonable reinvestigations into their own reported information about the account reported by Defendant National Credit, and the Defendant CRAs continue to report that inaccurate information.

69)     Additionally, Defendant National Credit also failed to report that its reporting is being disputed by Ms. Williams.

70)     Defendant National Credit's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008). "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio*, 889 F.3d 337, 349 (7th Cir. 2018).

71)     Moreover, the Defendant CRAs further continued to fail to comply with their statutory

obligations by continuing to fail to report that Defendant National Credit's reported information

about Ms. Williams is disputed by her.  *See Wheeler v. Equifax and TransUnion*, 17 cv 3328

(Dist.Ariz. May 30, 2018) ("[T]he statutory scheme expressly contemplates that consumer

disputes can be handled directly with a CRA.  See 15 U.S.C. § 1681i.  Accordingly, [the

consumer] sufficiently alleges that TransUnion performed an unreasonable reinvestigation" when

the consumer notified TransUnion that he was not disputing a debt, the furnisher did not respond,

and TransUnion failed to change the dispute status.).

   Defendant Furnisher Opportunity Financial and Defendant CRAs Experian and TransUnion.

72)     In late January 2022, Ms. Williams received a loan from Defendant Opportunity

Financial, and that loan agreement did not require Ms. Williams to make any loan payment until

February 2022.

73)     However, Defendant Opportunity Financial inaccurately reported to Defendant Experian

and to Defendant TransUnion that Ms. Williams' payments on the loan were 30 days late by

February 2022.

74)     Ms. Williams submitted multiple disputes of Defendant Opportunity Financial's reporting

to Defendant Experian and to Defendant TransUnion and, in Ms. Williams' dispute, she

specifically explained that Defendant Opportunity Financial's "reporting that in Feb. 2022 [this]

account was past due 30 days is wrong because [this] account was not opened unil late Jan. 2022

and the first payment was not due until Feb. 2022."

75)     Upon information and belief, Defendant Experian and Defendant TransUnion forwarded

Ms. Williams' multiple disputes to Defendant Opportunity Financial, and Defendant Opportunity

Financial received Ms. Williams' multiple disputes.

76)     However, Defendant Opportunity Financial failed to conduct reasonable investigations into its own reported information and continues to report that inaccurate information.

77)     Defendant Experian and Defendant TransUnion also failed to conduct reasonable reinvestigations into their own reported information about the account reported by Defendant Opportunity Financial, and Defendant Experian and Defendant TransUnion continue to report that inaccurate information.

78)     Additionally, Defendant Opportunity Financial, Defendant Experian, and Defendant TransUnion also failed to report that their reporting about Ms. Williams is being disputed by her and, thus, in Ms. Williams' dispute, she also specifically protested that Opportunity Financial is not reporting that its reporting is being disputed.

79)     Nevertheless, Defendant Opportunity Financial continues to fail to comply with its statutory obligations by continuing to fail to report that its reported information about Ms. Williams is disputed by her.

80)     Defendant Opportunity Financial's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008). "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or her debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio*, 889 F.3d 337, 349 (7th Cir. 2018).

81)     Moreover, Defendant Experian and Defendant TransUnion further continued to fail to comply with their statutory obligations by continuing to fail to report that Defendant Opportunity

Financial's reported information about Ms. Williams is disputed by her. *See Wheeler v. Equifax and TransUnion*, 17 cv 3328 (Dist.Ariz. May 30, 2018) ("[T]he statutory scheme expressly contemplates that consumer disputes can be handled directly with a CRA. See 15 U.S.C. § 1681i. Accordingly, [the consumer] sufficiently alleges that TransUnion performed an unreasonable reinvestigation" when the consumer notified TransUnion that he was not disputing a debt, the furnisher did not respond, and TransUnion failed to change the dispute status.).

**Causes of Action.**

Count One – As to Defendant Breit Investment's Failure to Reasonably Investigate.

82) The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information." "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry.").

83) Defendant Breit Investment negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Williams that Defendant Breit Investment itself is providing to a consumer reporting agency.

<u>Count Two – As to Defendant Breit Investment's Failure to Report Ms. Williams's Dispute.</u>

84)    The Fair Credit Reporting Act's Subsection 1681s–2(a)(3) is titled "Duty to Provide Notice of Dispute" and states that, "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed [ ], the person may not furnish the information to any consumer reporting agency without notice that such information is disputed." Also, Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall[, ] if the investigation finds that the information is incomplete [ ], report those results." Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA [at Subsection 1681s-2(b)(1)(D)] requires furnishers to report that fact when reporting the disputed information." *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009). Further, "after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)." *Id*. (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008)).

85)    Defendant Breit Investment negligently or willfully violated Subsection 1681s-2(b)(1)(D) by negligently or willfully reporting its information about Ms. Williams to a consumer reporting agency without noting that Ms. Williams is disputing that information.

<u>Count Three – As to Defendant Comenity Capital's Failure to Reasonably Investigate.</u>

86)    The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information." "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient*

*Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry.").

87)    Defendant Comenity Capital negligently or willfully violated Subsection 1681s-2(b)(1) (A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Williams that Defendant Comenity Capital itself is providing to a consumer reporting agency.

   Count Four – As to Defendant Comenity Capital's Failure to Report Ms. Williams's Dispute.

88)    The Fair Credit Reporting Act's Subsection 1681s–2(a)(3) is titled "Duty to Provide Notice of Dispute" and states that, "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed [ ], the person may not furnish the information to any consumer reporting agency without notice that such information is disputed." Also, Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall[, ] if the investigation finds that the information is incomplete [ ], report those results." Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA [at Subsection 1681s-2(b)(1)(D)] requires furnishers to report that fact when reporting the disputed information." *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009). Further, "after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)." *Id*. (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008)).

89)     Defendant Comenity Capital negligently or willfully violated Subsection 1681s-2(b)(1)
(D) by negligently or willfully reporting its information about Ms. Williams to a consumer
reporting agency without notating that Ms. Williams is disputing that information.

      <u>Count Five – As to Defendant Jefferson Capital's Failure to Reasonably Investigate.</u>

90)     The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part,
that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information
provided by a person to a consumer reporting agency, the person shall [ ] conduct an
investigation with respect to the disputed information."  "[C]ourts have consistently concluded
that § 1681s-2(b) should be read as requiring a 'reasonable' investigation."  *Humphrey v. Navient
Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other
grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a
[furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the
disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is
reasonable is a factual inquiry.").

91)     Defendant Jefferson Capital negligently or willfully violated Subsection 1681s-2(b)(1)(A)
by negligently or willfully failing to conduct reasonable investigations with respect to
information about Ms. Williams that Jefferson Capital itself is providing to a consumer reporting
agency.

      <u>Count Six – As to Defendant ME Credit Union's Failure to Reasonably Investigate.</u>

92)     The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part,
that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information
provided by a person to a consumer reporting agency, the person shall [ ] conduct an
investigation with respect to the disputed information."  "[C]ourts have consistently concluded

that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry.").

93)     Defendant ME Credit Union negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Williams that Defendant ME Credit Union itself is providing to a consumer reporting agency.

   Count Seven – As to Defendant ME Credit Union's Failure to Report Ms. Williams's Dispute.

94)     The Fair Credit Reporting Act's Subsection 1681–2(a)(3) is titled "Duty to Provide Notice of Dispute" and states that, "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed [ ], the person may not furnish the information to any consumer reporting agency without notice that such information is disputed." Also, Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall[, ] if the investigation finds that the information is incomplete [ ], report those results." Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA [at Subsection 1681s-2(b)(1)(D)] requires furnishers to report that fact when reporting the disputed information." *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009). Further, "after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)." *Id*. (citing

*Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008)).

95)    Defendant ME Credit Union negligently or willfully violated Subsection 1681s-2(b)(1)

(D) by negligently or willfully reporting its information about Ms. Williams to a consumer

reporting agency without notating that Ms. Williams is disputing that information.

    <u>Count Eight – As to Defendant National Credit's Failure to Reasonably Investigate.</u>

96)    The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part,

that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information

provided by a person to a consumer reporting agency, the person shall [ ] conduct an

investigation with respect to the disputed information." "[C]ourts have consistently concluded

that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient

Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other

grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a

[furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the

disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is

reasonable is a factual inquiry.").

97)    Defendant National Credit negligently or willfully violated Subsection 1681s-2(b)(1)(A)

by negligently or willfully failing to conduct reasonable investigations with respect to

information about Ms. Williams that Defendant National Credit itself is providing to a consumer

reporting agency.

    <u>Count Nine – As to Defendant National Credit's Failure to Report Ms. Williams's Dispute.</u>

98)    The Fair Credit Reporting Act's Subsection 1681s–2(a)(3) is titled "Duty to Provide

Notice of Dispute" and states that, "[i]f the completeness or accuracy of any information

furnished by any person to any consumer reporting agency is disputed [ ], the person may not

furnish the information to any consumer reporting agency without notice that such information is disputed." Also, Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall[, ] if the investigation finds that the information is incomplete [ ], report those results." Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA [at Subsection 1681s-2(b)(1)(D)] requires furnishers to report that fact when reporting the disputed information." *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009). Further, "after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)." *Id.* (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008)).

99) Defendant National Credit negligently or willfully violated Subsection 1681s-2(b)(1)(D) by negligently or willfully reporting its information about Ms. Williams to a consumer reporting agency without notating that Ms. Williams is disputing that information.

Count Ten – As to Defendant Opportunity Financial's Failure to Reasonably Investigate.

100) The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information." "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is

reasonable is a factual inquiry.").

101)    Defendant Opportunity Financial negligently or willfully violated Subsection 1681s-2(b) (1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Ms. Williams that Defendant Opportunity Financial itself is providing to a consumer reporting agency.

Count Eleven–As to Defendant Opportunity Financial's Failure to Report Ms. Williams' Dispute.

102)    The Fair Credit Reporting Act's Subsection 1681s–2(a)(3) is titled "Duty to Provide Notice of Dispute" and states that, "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed [ ], the person may not furnish the information to any consumer reporting agency without notice that such information is disputed." Also, Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall[, ] if the investigation finds that the information is incomplete [ ], report those results." Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA [at Subsection 1681s-2(b)(1)(D)] requires furnishers to report that fact when reporting the disputed information." *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009). Further, "after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)." *Id.* (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008)).

103)    Defendant Opportunity Financial negligently or willfully violated Subsection 1681s-2(b) (1)(D) by negligently or willfully reporting its information about Ms. Williams to a consumer reporting agency without notating that Ms. Williams is disputing that information.

<u>Count Twelve – As to Defendant Equifax's Failure to Reasonably Reinvestigate.</u>

104)    The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

105)    Defendant Equifax negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct reasonable reinvestigations into its own files' information regarding Ms. Williams that is being reported by Defendants Comenity Capital, Jefferson Capital, ME Credit Union, and National Credit.

<u>Count Thirteen – As to Defendant Experian's Failure to Reasonably Reinvestigate.</u>

106)    The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

107)    Defendant Experian negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct reasonable reinvestigations into its own files' information regarding Ms. Williams that is being reported by Defendants Jefferson Capital, ME Credit Union, National Credit, and Opportunity Financial.

<u>Count Fourteen – As to Defendant TransUnion's Failure to Reasonably Reinvestigate.</u>

108)    The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

109)    Defendant TransUnion negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct reasonable reinvestigations into its own files' information regarding Ms. Williams that is being reported by Defendants Breit Investment, Jefferson Capital, ME Credit Union, National Credit, and Opportunity Financial.

### Prayer for Relief.

WHEREFORE, Monieka Williams respectfully prays that this Honorable Court hold a trial by jury and that this Court enter judgment in her favor (and against the Defendants) for statutory damages, for her actual damages (including her reasonable attorney's fees and costs), and for punitive damages.

Respectfully submitted,
Plaintiff Monieka Williams' Counsel
North & Sedgwick, L.L.C.
by:     */s/ Paúl Camarena*
Paúl Camarena, Esq.
500 So. Clinton, No. 132
Chicago, IL 60607
(312) 493-7494
paulcamarena@paulcamarena.com